ARK. STATE HIGHWAY COMM'N *v.*
VIRGIL E. WINGO ET UX

5-4996                                   445 S. W. 2d 891

Opinion delivered October 27, 1969

*Thomas B. Keys* and *Philip N. Gowen,* for appellant.

*Felver A. Rowell, Jr.,* for appellees.

CONLEY BYRD, Justice. The only point raised in this eminent domain appeal by the Arkansas State Highway Commission is that the jury verdict is excessive and not supported by substantial evidence. Two expert witnesses on behalf of the highway department testified to damages of $8,750.00 and $8,175.00 respectively. Mr. Lloyd Pearce, an expert called by the landowner, testified to damages of $17,675.00 and appellee Virgil Wingo testified to damages of $30,453.00. The jury verdict is $19,-000.00.

The record shows that the taking for Interstate 40 enters Mr. Wingo's 365 acre farm on the southern boundary, near the southeast corner, and proceeds west in such manner that 29.66 acres in the southwest corner is landlocked without access. The taking itself is irregular, with obtrusions both on the north and south sides for use as tourist rest areas. Because of the terrain the taking also isolates a portion in the southeast corner from the remainder of his farm. The undisputed testimony shows that it will cost $1,000.00 to build a road from his main farm area to the property in the south-east corner that is north of the interstate. The land condemned by the Highway Department comprises 46.93 acres.

Mr. Wingo testified that the land was located approximately three-quarters of a mile from the city limits of Conway and that its highest and best use was for inter-urban land and farm land. Mr. Wingo based his valuations upon his knowledge of land that he had bought and sold in the area. He gave a before valuation of $151,000.00 and an after valuation of $120,-547.00. His breakdown of the damage was $18,772.00 for the 46.93 acres actually taken; $10,381.00 damage to the landlocked 29.66 acres; $1,000.00 for constructing a road to reach the lands in his southeastern corner, north of the interstate; and $300.00 for a pond he said was filled up during the highway construction.

On cross-examination the following occurred:

"Q.   Will you tell the jury that all this acreage was worth $400.00 an acre?

A.   Yes, because—Now, this over here on this road was worth more than that.

Q.   That is your opinion. What did you have to base that on? How many sales do you know of of property in this area on this highway?

A.   I don't know—

Q.   Let me ask the question and then you answer. You say this land on this highway is worth a whole lot?

A.   It is worth more than the land off the highway.

Q.   How far is this point from the City of Morrilton, this area here?

A.   I guess from the city about a mile and a half, where the house is.

Q.   Do you contend that this property is worth as much as property in the city limits of Morrilton?

A.   I am valuing that—

Q.   How many acres of cleared land do you have?

A.   It is practically all cleared, except maybe 100 acres on this ridge."

*    *    *

"Q.   The only thing you have to base your before value on is the fact that you think this is what the property is worth? You can't prove it to the jury?

A. I haven't sold any of it, and I have had lots of chances, and I paid about $300.00 for some of that."

"Q. Other than the fact that you made improvements on your pasture, have you actually sowed this and fertilized it?

A. Yes, sir, I have the figures.

Q. I don't need the figures. You are not able to show me any sales anywhere in this county of 80 or 120 or 160 acres of pasture land at $400.00 an acre?

A. I told you on the stand I figured this two or three different ways. As a farm—

Q. The fact is, Mr. Wingo—

A. As inter-urban land (sic) and as farm land.

Q. You call this inter-urban land?

A. Yes, sir.

Q. You are entitled to your opinion.

A. My—

Q. Don't argue with me.

A. I'm sorry.

Q. That will be all."

Mr. Lloyd Pearce, the landowners' expert, arrived at total damages of $17,675.00 based upon before and after value. Concededly in arriving at this value he did not consider the $1,000.00 necessary to construct the road nor any damages to the pond.

Witnesses for the highway department testified that the highest and best use for the proprety was for agricultural purposes. They denied that it had any potential value for residential development in the foreseeable future.

Mr. Wingo's testimony on direct examination is obviously sufficient to sustain the jury's verdict. The issue here is actually whether or not the cross-examination destroyed that substantiality. We find that it did not.

Affirmed.